IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIZABETH-EMI BENDECK,<br><br>                Plaintiff,<br><br>  vs.<br><br>U.S. BANK NATIONAL ASSOCIATION; JP MORGAN CHASE BANK N.A.,<br><br>                Defendants. | Civ. No. 17-00180 JMS-RLP<br><br>ORDER: (1) DISMISSING FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; AND (2) REVOKING PLAINTIFF'S IFP STATUS |

**<u>ORDER: (1) DISMISSING FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; AND (2) REVOKING PLAINTIFF'S IFP STATUS</u>**

**I. <u>INTRODUCTION</u>**

On April 18, 2017, pro se Plaintiff Lizabeth-Emi Bendeck ("Plaintiff") filed a document titled "Bill in Equity to Declare an Absolute Deed to be a Mortgage; Exoneration of Surety; To Construct a Trust upon the Grantee/Trustee; and Notice of Merger in the Equity Jurisdiction," which the court construed as a Complaint.[1] ECF No. 1. On May 4, 2017, the court dismissed the Complaint, with leave to amend, for lack of subject matter jurisdiction and failure

---

[1] Plaintiff also filed an application to proceed in forma pauperis ("IFP"), ECF No. 2, which was granted on May 4, 2017, ECF No. 6.

to state a plausible claim for relief ("May 4 Order").  ECF No. 6; *Bendeck v. Workman*, 2017 WL 1758079, at *4-5 (D. Haw. May 4, 2017).

On May 30, 2017, Plaintiff filed an "Amended Bill in Equity," which the court construes as a First Amended Complaint ("FAC"), against Defendants US Bank National Association ("US Bank") and JPMorgan Chase Bank N.A. ("Chase Bank") (collectively, "Defendants") asserting claims for breach of contract, breach of trust, and conversion based on allegations of mortgage and securities fraud in connection with Plaintiff's residential mortgage loan.  ECF No. 7.  Plaintiff seeks reimbursement of all loan payments, declaratory and injunctive relief, and an award of fees and costs.

For the reasons set forth below, the court finds that the FAC fails to state a plausible claim for relief.  Further, the court finds that the theories upon which Plaintiff's claims and allegations are based are frivolous, and therefore amendment would be futile.  Accordingly, the FAC is DISMISSED without leave to amend.  The court further finds that any appeal of this Order would not be taken in good faith and therefore, Plaintiff's IFP status is REVOKED.

## II. **BACKGROUND**

On January 12, 2006, Plaintiff executed a promissory note ("Note") for a $302,000 residential mortgage loan ("Mortgage") from Home 123 Corporation ("Home 123"), secured by real property located at 43 Pakalana Street,

Hilo, Hawaii (the "subject property"). FAC ¶¶ 19, 29, 30, 32; Pl.'s Exs. 1, 2. The Mortgage, recorded at the State of Hawaii Bureau of Conveyances on January 19, 2006, identifies "LIZABETH E. BENDECK" as the Borrower and Home 123 as the Lender. Pl.'s Ex. 1 at 1, 2. In addition to signing the Mortgage, Plaintiff also "granted [Home 123] a deed of trust on the [subject property]." FAC ¶ 20. The FAC alleges that the Note was sold to "[US Bank], as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset Backed Pass-Through Certificates, Series 2006-NC3," and that Chase Bank is the current loan servicer. FAC ¶¶ 13, 15; Allonges, Pl.'s Exs. 3, 4.

Initially believing that she had received a loan, Plaintiff allegedly made "numerous monthly payments" to Home 123 and Chase Bank. *Id.* ¶¶ 20, 22, 23, 30-31, 37. Sometime thereafter, Plaintiff was "informed of mortgage fraud," and now alleges that Home 123 did not actually loan her "the sum of $302,000.00." *Id.* ¶ 33. To establish this belief, the FAC first alleges that Plaintiff is neither the "Borrower" nor "LIZABETH E. BENDECK," and thus she is not the person who allegedly obtained a loan from Home 123. *Id.* ¶¶ 45, 52(c). Second, the FAC alleges that that "at no time did [Plaintiff] personally receive a check or deposit into [her] checking account in the amount of $302,000.00 from Home 123." *Id.* ¶ 52(f).

Third, the FAC alleges in conclusory fashion that pursuant to federal banking law and accounting principles: (a) the "Note has cash value," *id.* ¶ 64; (b) Home 123 was required to deposit and record the Note in its books as a bank asset in the amount of $302,000, *id.* ¶¶ 54-59; and (c) once recorded, Home 123 became the borrower and owed Plaintiff, the lender, payment of $302,000, *id.* ¶¶ 54, 57, 60. Thus, the FAC alleges that "payment from a bank in exchange for a Promissory Note . . . is not a loan, but merely an asset swap." *Id.* ¶ 64.

Moreover, the FAC alleges that Home 123 was "not out any money on [the alleged asset swap] because it had no money in the deal in the first place." *Id.* ¶ 84. Home 123 allegedly "took [Plaintiff's] Asset/[Note], converted it to [its] own use as a securities contract," made "huge profits," and returned the amount of the Note to Plaintiff "as a 'loan.'" *Id.* ¶¶ 71-73. The loan from Home 123 was allegedly Plaintiff's "own funds being returned to her." *Id.* ¶ 80.

Based on the foregoing, the FAC alleges that the Note satisfied Plaintiff's loan payment obligations at the time of closing. *Id.* ¶ 148. Because the loan was "paid at closing," there was no need for a Mortgage, which was allegedly "obtained by fraud." *Id.* ¶ 149. And by fraudulently "converting the [Note] into a securities contract and profiting thereby," Defendants committed "conversion of property . . . and a breach of trust." *Id.* ¶ 153. Additionally, the FAC alleges that

the securitization of the Note, by which the Note and Mortgage were separated, rendered the Mortgage invalid and unenforceable. *Id.* 90-96.

At some point, US Bank initiated foreclosure proceedings, claiming that Plaintiff defaulted on the loan. *Id.* ¶¶ 26, 38. But the FAC alleges that Defendants have "no standing or lawful authority to foreclose" because they did not "invest[] a dime to obtain" the subject property. *Id.* ¶¶ 86-88. This is because not only was the loan allegedly satisfied at closing, but that pursuant to federal banking law, Defendants were allegedly reimbursed from insurance for the face value of the Note 91 days after default. *Id.* ¶¶ 85, 104.

Plaintiff seeks: (1) an order declaring that she holds equitable and legal title to the subject property; (2) injunctive relief preventing Defendants from foreclosing the subject property, and directing Defendants to reimburse Plaintiff for all payments she made on the loan and all profits obtained from Defendants' use of the Note; and (3) an award of court fees and costs. *Id.* ¶¶ 167, 198.

The FAC asserts that this court has diversity jurisdiction over this action, contending that Plaintiff is "a Private American National born on Birth State, whose home is on private common law venue within a non-military occupied

private estate on Hawaii county, on Hawaii state,"[2] *id.* ¶ 2, Defendant Chase Bank "is located in Delaware . . . and is a citizen of . . . Delaware," *id.* ¶ 3, and Defendant US Bank "is located [in] . . . Minneapolis, MN . . . and is a citizen of . . . Minnesota," *id.* ¶ 5. The FAC further alleges that "the amount in controversy is over $75,000." *Id.* ¶ 7.

The FAC's attempt to assert diversity jurisdiction by alleging that US Bank is located in Delaware, FAC ¶ 3, and Chase Bank is located in Minnesota, *id.* ¶ 5, is insufficient. "[A] national bank . . . is a citizen of the State in which its main office, as set forth in its articles of incorporation, is located." *Washovia Bank v. Schmidt*, 546 U.S. 303, 306-07 (2006); *see Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 709 (9th Cir. 2014) ("[U]nder 28 U.S.C. § 1348, a national bank is a citizen only of the state in which its main office is located.").

Although the FAC fails to allege where each Defendant's main office is located, other courts have determined that both US Bank's and Chase Bank's main offices are located in Ohio. *See, e.g.*, *Lowdermilk v. U.S. Bank N.A.*, 479 F.3d 994, 997 (9th Cir. 2007) (determining that US Bank is a citizen of Ohio,

---

[2] The FAC alleges more fully that Plaintiff is "a 'non-U.S. citizen,' non-enemy, pre-March 9, 1933, private American National with purely equitable rights protected by Article 23 of the Hague Convention on Laws of War, Laws and Customs of War on Land, Hague 4, October 18, 1907, which protects the civilian due process rights of Nationals living in an occupied country." FAC ¶ 8.

6

where its main office is located); *Oby v. Clear Recon Corp.*, 2017 WL 714305, at *3 (E.D. Cal. Feb. 23, 2017) (finding that because Chase Bank's main office is in Ohio, it is an Ohio citizen); *Guillen v. Countrywide Home Loans, Inc.*, 2016 WL 7103908, at * 4 (S.D. Tex. Dec. 6, 2016) (recognizing that U.S. Bank is an Ohio citizen); *Robertson v. GMAC Mortg. LLC*, 2016 WL 3344570, at *2 (W.D. Wash. June 16, 2016) ("Chase [Bank] is a citizen of Ohio.").

Despite the inadequacy of the FAC's allegations regarding Defendants' citizenship, it appears that there is actual diversity of citizenship of the parties. Thus, for purposes of this Order, the court assumes the existence of subject matter jurisdiction.

### III. STANDARDS OF REVIEW

The court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a)[3] to mandatory screening, and order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners"); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000)

---

[3] Section 1915(a) governs IFP proceedings.

(en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to sua sponte dismiss an in forma pauperis complaint that fails to state a claim).

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Plaintiff is appearing pro se; consequently, the court liberally construes the FAC. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and

an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013). A court may, however, deny leave to amend where further amendment would be futile. *See, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons, "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment").

## IV.  DISCUSSION

Even construed liberally, the FAC fails to state a claim that is remotely plausible. *See Iqbal*, 556 U.S. at 678 (explaining that to survive dismissal, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face" (internal citation and quotation marks omitted)). The FAC's factual allegations are largely conclusory and laden with numerous pronouncements about federal monetary law and the differences between legal and equitable doctrines. All claims, however, appear to arise from the erroneous premise that a promissory note is money, as well as meritless securitization and/or sovereign citizen theories.

**A.  Plaintiff's "Promissory Note is Money" Assertion is Without Merit**

The underlying premise for all of Plaintiff's claims is that her Note is the equivalent of cash, FAC ¶ 64, and when she granted the Note to Home 123, it

was deposited and recorded as a bank asset, *id.* ¶¶ 54-59, and then Plaintiff's money was returned to her in the form of a mortgage loan, *id.* ¶¶ 68, 69, 73. In short, by granting the Note, Plaintiff funded her own mortgage loan. *Id.* ¶ 80. From this premise, Plaintiff asserts that rather than receiving a loan, the parties engaged in an asset swap, *id.* ¶ 64, and thus, the Note satisfied Plaintiff's mortgage loan repayment obligations, *id.* ¶¶ 74, 147. Obviously, Plaintiff is mistaken.

Courts have easily rejected this theory. For example, *Demmler v. Bank One NA*, 2006 WL 640499 (S.D. Ohio Mar. 9, 2006) rejected the assertion that by giving a bank a promissory note, a plaintiff "gave the bank his 'money,' which [the bank] simply lent back to him" as "ridiculous" and without legal authority. *Id.* at *4. Thus, *Demmler* found the complaint to be "utterly frivolous," and determined that delving into the lengthy complaint's allegations would be a waste of judicial resources. *Id.* at *3. *See also Martinez v. Wells Fargo Bank*, 2014 WL 12026058, at *5 (S.D. Cal. Sept. 11, 2014) ("To the extent that plaintiff means to argue that he satisfied his loan-repayment obligations when he tendered his promissory note, plaintiff is wrong."); *Johnson v. Wennes*, 2009 WL 1228500, at *4 (S.D. Cal. May 5, 2009) ("It strains the imagination for plaintiff to suggest that he should have clear title to his home without paying for it.").

This court readily rejects the "promissory note is money" premise as absurd and frivolous.[4] And to the extent Plaintiff's claims rely on this premise, they are DISMISSED.

## B. The Securitization Theory

Plaintiff's claims are also based, in part, on a securitization theory. *See* FAC ¶¶ 25, 93-96. Variations of the securitization theory provide that the mere securitization of a note and/or the separation of the note and mortgage renders the note unenforceable. This court and numerous others have rejected similar claims. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir. 2011) (rejecting theory that splitting the deed from the note necessarily creates a situation where no party has the power to foreclose); *Leif v. Umpqua Bank*, 2017 WL 1788659, at *1 (D. Or. May 4, 2017) (dismissing claims

---

[4] Plaintiff also alleges that she never received actual legal tender from Home 123 and that because Defendants did not invest any funds in the subject property, they lack legal standing and legal authority to foreclose. FAC ¶¶ 52(f), 84-88. The "vapor money" theory provides that "since 1933 and the New Deal, the United States has been bankrupt and lenders have been creating unenforceable debts because they are lending credit rather than legal tender." *Ananiev v. Aurora Loan Servs., LLC*, 2012 WL 4099568, at *1 n.3 (N.D. Cal. Sept. 17, 2012). Under this theory, "loans not based on legal tender are not collectible." *Id.* Numerous courts across the country have rightly rejected such claims. *See Marvin v. Capital One*, 2016 WL 4548382, at *4-5 (W.D. Mich. Aug. 16, 2016) (finding the vapor money theory to be without legal basis and dismissing as frivolous claims arising from such theory) (collecting cases); *Miner v. JPMorgan Chase Bank*, 2013 WL 1089909, at *3 (N.D. Cal. Mar. 15, 2013) (finding that "claims based on the 'vapor money'. . . theory have no basis in law," and noting that such claims "have been brought and rejected across the United States for over 25 years"); *Carrington v. Fed. Nat'l Mortg. Ass'n*, 2005 WL 3216226, at *3 (E.D. Mich. Nov. 29, 2005) (finding "fundamentally absurd and obviously frivolous" plaintiff's claim that the lender unlawfully "created money" through its ledger entries).

based on the theory that securitization of a loan renders a subsequent foreclosure void); *Meinhart v. CMG Mortg., Inc.*, 2016 WL 6525832, at *2 (W.D. Wash. Nov. 3, 2016) ("[T]he borrower lacks standing to complain about any securitization because he is not a party to the securitization contracts."); *Klohs v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 1253, 1260 (D. Haw. 2012) (rejecting claims based on the "discredited belief that securitization of a mortgage renders the underlying note unenforceable") (citing cases); *Fed. Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *4 (D. Haw. Feb. 23, 2012) (collecting cases).

Based on the well-settled law set forth above, the court finds that to the extent Plaintiff's claims rely on allegations that Defendants securitized the Note without Plaintiff's authorization, and/or that the separation of the Note and Mortgage render the Note unenforceable, they are without merit.

**C.     The Sovereign Citizen Theory**

Finally, Plaintiff appears to rely on aspects of the widely discredited sovereign citizen theory. Adherents of this theory "believe that they are not subject to government authority and employ various tactics in an attempt to, among other things . . . extinguish debts." *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011) (citations omitted).

First, Plaintiff employs commonly-used sovereign citizen language asserting that she is not subject to the law and jurisdiction of the United States, but

rather, to purely equitable jurisdiction, under which the court must exercise equitable powers without reference to any law. *See* FAC ¶ 8 (alleging that Plaintiff is "a 'non-U.S. citizen,' non-enemy, pre-March 9, 1933 American National with purely equitable rights" and "requir[ing] this Court's prerogative power upon the estate to do complete justice via its Equity jurisdiction as there is no adequate remedy at law to accomplish complete justice in my case").

This court and courts across the country have flatly rejected "sovereign citizen" and similar theories as "frivolous, irrational [and] unintelligible." *United States v. Alexio*, 2015 WL 4069160, at *2-4 (D. Haw. July 2, 2015) (explaining theories in detail and collecting cases); *see also Alexio v. Obama*, 2015 WL 5440800, at *3 (D. Haw. Sept. 15, 2015) (noting uniform rejection of sovereign citizen theories). Thus, Plaintiff's reliance on the sovereign citizen theory for her jurisdictional argument is without merit. The court finds that Plaintiff is subject to the jurisdiction and laws of the United States.

And Plaintiff's assertion that she is entitled to an equitable remedy because she cannot obtain relief under the law is specious. The FAC alleges that Plaintiff has no adequate remedy at law because "[f]oreclosure statutes are used in violation of the principles of Equity, to commit a fraud against homeowners by totally ignoring the homeowner's equitable rights." FAC ¶ 197. But Plaintiff's alleged equitable rights arise from the baseless premise that a promissory note has

the same value as cash and/or from the rejected sovereign citizen argument that she is not subject to government authority and law. Accordingly, the court finds that Plaintiff is not entitled to equitable remedies merely because she has no claim under applicable foreclosure law.

Second, Plaintiff employs a common sovereign citizen argument that a name in all capital letters refers to a separate legal entity. The FAC alleges that Plaintiff's name is "Lizabeth Emi Bendeck," and that she is not and does not know "LIZABETH E. BENDECK." FAC ¶¶ 44, 45. Proponents of the sovereign citizen and/or redemption theory believe that "when 'a person's name is spelled . . . with initial capital letters and small letters, it represents the "real person" . . . [and w]henever a person's name is written in total capitals, . . . only [a] "strawman" [or separate entity] is referenced, and the flesh and blood person is not involved.'" *Santana v. United States*, 2017 WL 2470834, at *2 (S.D.N.Y. June 6, 2017). Again, numerous courts rightly have rejected the argument that "differences in capitalization of a person's name create separate legal entities." *U.S. Bank N.A. as T'ee for Greenpoint Mortg. Funding Tr. Pass Through Certificates Series 2006-AR4 v. Edwards*, 2017 WL 1396047, at *2 (D. Or. Feb. 23, 2017); *see Harris v. Colombo*, 2017 WL 1206262, at *2 (W.D. Mich. Apr. 3, 2017); *Santiago v. Century 21/PHH Mortgage*, 2013 WL 1281776, at *5 (N.D. Ala. Mar. 27, 2013).

In sum, Plaintiff's claims are frivolous. She is not entitled to a home without paying for it. The FAC is DISMISSED for failure to state a plausible claim for relief.

Plaintiff's Complaint was also based on the same frivolous and specious theories. Despite being given leave to amend, the FAC's claims suffer from the same defects -- reliance on meritless legal theories. Thus, the court finds that no further amendment could cure the defects and that granting leave to amend would be futile. *See Leadsinger, Inc.*, 512 F.3d at 532. Accordingly, the FAC is DISMISSED without leave to amend.

**D.    Revocation of IFP Status**

Finally, pursuant to 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith." Good faith is demonstrated when an appellant "seeks appellate review of any issue not frivolous." *Coppedge v. United States*, 369 U.S. 438, 445 (1962). For purposes of § 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Thus, revocation of IFP status is appropriate under § 1915 where an appeal lacks any non-frivolous issue or claim. *Hooker v. Am. Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002).

The court finds that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact. Accordingly, the court REVOKES Plaintiff's IFP status.

## V. **CONCLUSION**

Based on the foregoing, the FAC is DISMISSED without leave to amend for failure to state a claim, and Plaintiff's IFP status is REVOKED. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 23, 2017.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Bendeck v. U.S. Bank Nat'l Ass'n, et al.*, Civ. No. 17-00180 JMS-RLP, Order: (1) Dismissing First Amended Complaint Without Leave To Amend; and (2) Revoking Plaintiff's IFP Status